UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KATHLEEN CICCONE,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil Action No. 2:14-CV-02005-JLL<br><br>OPINION |

**LINARES,** District Judge.

Before the Court is Plaintiff Kathleen Ciccone ("Plaintiff" or "Claimant")'s appeal seeking review of a final determination by Administrative Law Judge Michal Lissek denying her application for Title II Social Security Disability Insurance Benefits. The Court resolves this matter on the Parties' briefs pursuant to Local Civil Rule 9.1(f). For the reasons set forth below, the Court AFFIRMS the final decision of the Commission of Social Security (the "Commissioner").

**I.    BACKGROUND**

   A. <u>Procedural History</u>

Plaintiff, Ms. Kathleen Ciccone, applied for disability insurance benefits on or around August 10, 2010. (R. at 19). She alleged that her various physical and mental impairments began February 17, 2008. *Id.* On November 14, 2012, Administrative Law Judge ("ALJ") Michal Lissek recognized that although Plaintiff had certain limitations and restrictions, she was not disabled pursuant to the definition of disability of the Social Security Act (SSA). *Id.* at 32.

1

Plaintiff filed a request for review by the Appeals Court on December 4, 2012. *Id.* at 14-15. Plaintiff's review was denied on February 7, 2014. *Id.* at 5. Plaintiff then filed a complaint with this Court on March 31, 2014.

B. <u>Plaintiff's Medical History</u>

Ms. Kathleen Ciccone is a 38-year old individual and asserts that the onset of her various disabilities was February 17, 2008. (R. at 19). Ms. Ciccone claims that because of various conditions, including abdominal pain, bilateral inguinal neuropathy, and depression, she suffers from: (1) sleep disturbance, (2) mood disturbance, (3) emotional lability, (4) feelings of guilt and worthlessness, (5) social withdrawal, (6) decreased energy, (7) chronic pain, (8) fatigue, and (9) difficulties with sustaining concentration and attention. *Id.* at 21-22. Plaintiff graduated from high school and has previous experience working as a wholesale attendant and stockperson. *Id.* at 159. She also lived with her husband and three children, and indicated that she "cared for her three children, prepared small meals, completed housework, went out daily, walked, drove a car, went grocery shopping, socialized, and attended parent-teaching meetings, church, and her children's sporting events." *Id.* at 181-83. She was also able to take care of her mother who had previously suffered from a stroke. *Id.* 179. She has worked consistently until February 17, 2008, when her various conditions and impairments worsened. *Id.* at 158. Her past work required physical strength and endurance, standing, walking, lifting, and carrying, and a great attention to detail.

1. <u>Plaintiff's Physical Impairments</u>

In March and April 2008, Ms. Ciccone underwent laparoscopy procedures to diagnose and remove adhesions that caused her pelvic pain. (R. at 387, 396-97). Several weeks later, Plaintiff followed up with Dr. Mark Ransom and said that her conditions had improved and that she was feeling much better. *Id.* at 214-15. In August 2008, Plaintiff returned to Dr. Ransom, complaining that her pelvic pain had returned to the same levels prior to the surgery. *Id.* at 213. An ultrasound revealed that there was no gynecological source for her reported pain. *Id.* Ms. Ciccone did not return to Dr. Ransom for treatment until January 2009, at which point he conducted a CT scan. *Id.* at 212. Dr. Ransom did not see anything abnormal or unusual, and he recommended that Claimant engage in pain management, acupuncture, and exercise. *Id.*

Plaintiff underwent diagnostic laparoscopy and removal of adhesions procedures on December 6, 2009. *Id.* at 274. Approximately a month and a half later, on January 22, 2010, Ms. Ciccone had another laparoscopy and lysis of adhesions. *Id.* at 312, 338. Hospital staff noted that Plaintiff had a history of abdominal pain and adhesions, likely "due to previous C-sections." *Id.* at 312.

Ms. Ciccone did not seek further treatment for six months. (R. at 377-78). On June 2, 2010, she went to Dr. Michael Umanoff, a pain management physician, to begin her recommended pain management treatment. *Id.* Dr. Umanoff noted that Plaintiff described her pain as "shooting, itching, sharp, stabbing, tingling and pulsing" and suggested "long-acting medication and a nerve stimulator trial." *Id.* at 378, 399-400. Plaintiff did not return to Dr. Umanoff until November 2010, when her stimulator trial was placed. *Id.* at 383, 399-400. Ms. Ciccone found that her pain was reduced 60% to 70%, and a pulse generator was inserted in her

3

lower abdomen on January 14, 2011. *Id.* at 385-86, 398. On January 17, Ms. Ciccione reported that she was feeling very well and did not need painkillers after the procedure. *Id.* at 398.

In February 2011, Plaintiff sought treatment from Dr. Alexander Hoffman; she stated that the stimulator had not improved her condition and that she continued feeling significant pain. *Id.* at 401. She also reported limitations in her ability to lift "anything," and pain on standing "for any period of time." *Id.* On March 17, after reviewing medical reports and evidence, Dr. Howard Goldbas concluded that despite her pain, Ms. Ciccone could perform light work. *Id.* at 410-17.

On June 23, 2011, Dr. Umanoff completed a "General Medical Report" regarding Plaintiff's condition. (R. at 418-420). Dr. Umanoff failed to note any limitations on Plaintiff's capabilities. *Id.* at 419. About one month later, on July 29, 2011, Plaintiff said that she felt sporadic, intermittent pains and that the pulse stimulator had not been working for approximately one month. *Id.* at 456. An examination of Plaintiff's abdominal revealed no abnormalities. *Id.* Claimant did not require in-person evaluations or seek treatment again until November 2, 2011, at which point Dr. Umanoff increased Plaintiff's medication because the simulator was not working correctly. *Id.* at 456-57. However, Dr. Umanoff did not find anything unusual upon examining Ms. Ciccone. *Id.* at 457.

On November 8, 2011, Ms. Ciccone met with Dr. Rambhai Patel, who found that Ms. Ciccone was not experiencing any acute distress, walked normally without an assistive device, and had a normal abdominal examination. *Id.* at 424. Furthermore, Dr. Patel did not note any limitations, nor did he believe that Plaintiff was unable to work. *Id.* at 424-25.

Four months later, on March 12, 2012, Claimant returned to Dr. Umanoff. Dr. Umanoff recommended a nerve block after Plaintiff stated that her pain levels had increased. (R. at 458). In April 2012, Plaintiff stated that the nerve block reduced her pain by 30% to 40%, and Dr.

4

Umanoff recommended a second nerve block. *Id.* at 459. Although Ms. Ciccone continued to feel abdominal cramps on the left side of her body, she also said that the nerve block "helped to achieve essentially complete resolution of her right-sided complaints, as well as her periumbilical pain." *Id.* at 464.

Plaintiff went to the emergency room on September 4, 2012, complaining of stomach pains. (R. at 470). However, aside from slight abdominal tenderness, Plaintiff's conditions seemed ordinary. She also exhibited normal mental status and full muscle strength throughout her body. *Id.* at 471. Ms. Ciccone was discharged from the hospital that same day. *Id.* at 472. Several weeks later, Dr. Umanoff completed a "Medical Assessment of Ability to do Work-Related Activities" for Ms. Ciccone. *Id.* at 478-81. He concluded that Ms. Ciccone was able to complete less than sedentary work, and could only sit, stand, and walk for less than two hours a day. *Id.*

2. Plaintiff's Mental Impairments

Though Plaintiff alleged that her various physical and mental impairments began on February 17, 2008, she did not seek help for her deteriorating mental condition until September 27, 2010, two-and-half-years later. (R. at 381). Examiners at the Psychological Group of Northern New Jersey determined that Ms. Ciccone was fully oriented with normal thought content. *Id.* Additionally, the examiners concluded that Plaintiff had regular judgment and insight, normal speech, and denied any suicidal or homicidal ideation. *Id.* After two follow-up appointments in October 2010, Ms. Ciccone stopped treatment. *Id.* at 380.

Ms. Ciccone sought out Dr. Martin Weiner, a psychiatrist, on December 14, 2011, more than a year after her initial mental health evaluations. (R at 443). At that time, no objective

5

findings were recorded. *Id.* Two weeks later, Plaintiff told Dr. Weiner that she had difficulty sleeping; he switched her medication and, at her next appointment on January 11, 2012, Plaintiff said that her sleep had improved. *Id.* at 443-44. Dr. Weiner then completed a Mental Impairment Questionnaire and indicated that Ms. Ciccone had marked difficulties in maintaining social functioning, marked restriction in activities of daily living, and continual episodes of deterioration. *Id.* at 438-41. However, during follow-up appointments in July and August of 2012, Ms. Ciccone stated that from a psychological standpoint, she was doing well. *Id.* at 450-51.

Dr. Lawrence Resnick completed a Mental Health Assessment form for Plaintiff on October 8, 2012. *Id.* at 483-84. Though he concluded that Ms. Ciccone met a listed impairment, there was no explanation given, nor did Plaintiff provide any treatment notes from this source.

### 3. Plaintiff's Recent Medical Evidence

On August 8, 2014, Dr. Charles Haddad, Ms. Ciccone's gynecologist, completed a Medical Assessment of Ability to do Work-Related Activities. (Ex. 6-1 at 1-3). Dr. Haddad evaluated Ms. Ciccone and concluded that she was limited in her abilities to sit, stand, walk, carry, push and pull, reach, bend, and twist. *Id.* at 2. Dr. Haddad further advised that Plaintiff would not be able to work 3 days per week, "plus the duration of menstruation." *Id.* at 3. Dr. Haddad observed that Plaintiff would undergo procedures for menorrhagia and pelvic adhesions on August 20, 2014. *Id.*

Plaintiff's pain management physician, Dr. Umanoff, submitted a Medical Assessment of Ability to do work-related activities. Plaintiff's RFC, which refers to the most that an individual is able to do, despite limitations caused by her impairments, diagnoses her with "intractable

6

abdominal pain and bilateral inguinal neuropathy." (Ex. 6-1 at 7). Dr. Umanoff also concluded that Plaintiff was very limited in her movements. He expressed that Plaintiff "would not be able to work 3 days per week in addition to the entirety of her menstruation." *Id.* at 8. He also noted that "Ms. Ciccone failed hysterectomy due to a predominance of adhesions, that she has had multiple surgeries for the adhesions, that she failed a peripheral nerve stimulator, that she has debilitating pain during her menses, and that she requires opioids for pain control." *Id.* at 9.

Finally, Dr. Weiner, Ms. Ciccone's psychiatrist, diagnosed Ms. Ciccone with Major Depressive Disorder. Plaintiff displays symptoms of "sleep and mood disturbance, emotional lability, feelings of guilt and worthlessness, social withdrawal, and isolation and decreased energy." (Ex. 6-1 at 11). Dr. Weiner noted that Plaintiff continues to experience periodic mental deterioration. *Id.* at 15. Dr. Weiner also believed that Ms. Ciccone meets Listing 12.04 for Affective Disorders. *Id.* at 14-15.

## II.   LEGAL STANDARD

### A. The Five-Step Process for Evaluating Whether a Claimant Has a Disability

Pursuant to the Social Security Act, the Social Security Administration may pay a period of disability, disability insurance benefits, and supplemental security income (SSI) to individuals who are disabled. 42 U.S.C. §§ 423(a), 1382(a). An individual is classified as disabled if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A). A person cannot engage in substantial gainful activity if his physical or mental impairments are "of such severity that he is not only unable to do his previous work but cannot,

7

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A), 1382c(a)(3)(B).

The Social Security Act outlines a five-step process to determine whether a claimant is disabled. The Administrative Law Judge (ALJ) first examines whether the claimant is currently performing substantial gainful activity. 20 C.F.R. §404.1520(a)(4)(i). If the individual is currently performing such activity, then the claimant is not disabled, and the process is complete. 20 C.F.R. §404.1520(a)(4)(f), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the ALJ proceeds to step two and considers whether the claimant has a severe physical or mental impairment, or combination of impairments. 20 C.F.R. §404.1520(a)(4)(ii), 416.920(a)(4)(ii). If an impairment is present, the ALJ continues to step three in the evaluation process; however, if no impairment exists, the individual is not disabled. 20 C.F.R. §404.1520(a)(4)(ii), 416.920(a)(4)(ii).

Step three requires the ALJ to assess whether the claimant's severe impairment matches or is equivalent to a listed impairment. 20 C.F.R. §404.1520(a)(4)(iii), 416.920(a)(4)(iii). If this is the case, the claimant is disabled. 20 C.F.R. §404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ continues to step four, which comprises multiple parts:

> (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity [RFC]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000). An individual's RFC refers to the most that the individual is able to perform, despite any limitations caused by her impairments. 20 C.F.R. §416.945(a)(1). A claimant is not disabled if the RFC allows her to perform past relevant work. 20 C.F.R. §404.1520(a)(4)(iv). If a claimant is unable to do so, the

ALJ advances to the final step of the process to evaluate the individual's claim. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

The plaintiff carries the burden of proof for steps one through four. *Poulos v. Comm'r of Soc Sec.*, 474 F.3d 88, 92 (3d Cir. 2007). The fifth step is the sole component of the process in which the ALJ bears the burden of proof. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). For step five, the ALJ must determine that "there are other jobs existing in significant numbers in the national economy in which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). In making this assessment, the ALJ "must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled." *Id.*

B. The Standard of Review: "Substantial Evidence"

The ALJ's decision must be based on substantial evidence, which refers to "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)(quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). This Court must affirm the ALJ's decision if, after examining the totality of the evidence, it concludes that the decision is supported by substantial evidence. 42 U.S.C. §§405(g), 1383(c)(3); *See Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). This Court may not "weigh the evidence or substitute its conclusions for those of the fact finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)(citation omitted). This Court may not set aside an ALJ's decision simply because it "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)(citations omitted).

9

## III. DISCUSSION

### A. Whether the ALJ Properly Considered the Treating Source Opinions of Record in Accordance with the Regulations

Plaintiff argues that the opinions of her "treating physicians should be accorded 'controlling weight' . . . because their opinions are 'well-supported by medically acceptable clinical . . . diagnostic techniques." (Pl.'s Br. at 7). However, the Third Circuit has consistently found that "the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011). *See also Adorno v. Shalala*, 40 F.3d 43, 47-48 (3d Cir. 1994). The ALJ is exclusively responsible for making the RFC and disability determinations. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). The source of the medical opinion does not warrant "any special significance" as to determining a claimant's RFC, or whether an individual meets the definition of "disabled." *See* 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3); Social Security Ruling (SSR) 96-5p, 61 Fed. Reg. 34471, 34472 (1996). "Giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." SSR 96-5p, 61 Fed. Reg. at 34472.

The ALJ "is not required to seek a separate medical opinion" when determining the Claimant's RFC. *Mays v. Barnhart*, 78 F. App'x 808, 813 (3d Cir. 2003). However, a treating physician's opinion may control in the event that the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §404.1527(c)(2).

Extensive evidence in the record supports ALJ Lissek's conclusion. For example, the reports and forms submitted by Dr. Umanoff did not contain any explanations "or objective clinical support." (D's Br. at 8). The reports contain only vague assertions; such reports "in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best . . . where these co called 'reports are unaccompanied by thorough written reports, their reliability is suspect . . . '" *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993). Additionally, Dr. Umanoff's reports failed to document the findings that supported Ms. Ciccone's alleged limitations. His opinion was also inconsistent; for instance, though he advised Ms. Ciccone to begin a nerve stimulator trial as soon as possible, Ms. Ciccone "did not seek further in-person treatment for four months." (R. at 383, 399-400).

The ALJ also evaluated examinations conducted by Dr. Patel and Dr. Weiner. As noted previously, Dr. Patel found that Ms. Ciccone did not experience any acute distress, walked unassisted with a normal gait, and had a normal abdominal examination. *Id.* at 424-25. At no point did Dr. Patel assert that Ms. Ciccone suffered from functional limitations or that she was unable to work. Also, Ms. Ciccone did not consult Dr. Weiner regarding her mental impairments until nearly four years after the alleged onset of her disability. *Id.* at 381. Dr. Weiner also provided inconsistent information. For example, though Dr. Weisner found that Plaintiff suffered continual periodic mental decompensation, no such episodes are documented in his treatment notes or elsewhere in the record.

Plaintiff also argues that ALJ Lissek incorrectly accorded substantial weight to Dr. Martin Fechner, the medical expert who testified at the hearing. (Pl.'s Br. at 7). However, Dr. Fechner reviewed the entire medical record, heard Plaintiff and her husband testify, and rendered a physical opinion consistent with the record as a whole. Dr. Fechner's findings are also

11

corroborated by Dr. Patel, who examined Plaintiff and found that she "was in no acute distress, walked unassisted with a normal gait, and had a normal abdominal examination." (R. at 424-25). Furthermore, when evaluating disability claims, an ALJ may seek and consider opinions of a medical expert. 20 C.F.R. § 404.1527(e)(2)(iii).

Given the evidence in the record, this Court finds that ALJ Lissek properly considered the treating source opinions of record in accordance with the regulations.

### B. Whether Plaintiff's Additional Evidence Provides a Basis for Remand

Ms. Ciccone provides recent medical evidence, which contains the opinions of Drs. Haddad, Umanoff, and Weiner, to contradict ALJ Lissek's decision. However, Plaintiff did not present these opinions to the ALJ- they were rendered almost two years after the November 2012 decision. Extensive case law holds that "[n]o statutory provision authorizes the district court to make a decision on the substantial evidence standard based on new and material evidence never presented to the ALJ." *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). "The correctness of [the ALJ's] decision depends on the evidence that was before him. He cannot be faulted for having failed to weigh evidence never presented to him." *Id.* at 592. *See also Jones v. Sullivan*, 954 F.2d 125, 128 (3d Cir. 1991)(citing U.S. v. Carlo Bianchi & Co., 373 U.S. 709, 715 (1963)("Because [] evidence was not before the ALJ, it cannot be used to argue that the ALJ's decision was not supported by 'substantial evidence.'").

When a Claimant seeks to rely on evidence that was not presented to the ALJ, the district court may remand the case when such evidence is (1) new, (2) material, and (3) "good cause exists for not presenting the evidence to the Commissioner." *Matthews*, 239 F.3d at 592-93; 42 U.S.C. §405(g). New evidence refers to material that was "not in existence or available to the

12

claimant at the time of the administrative proceeding." *Sullivan v. Finklestein*, 496 U.S. 617, 626 (1990). Evidence is material when it "relate[s] to the time period for which benefits were denied, and does not concern evidence of a later acquired disability, or of the subsequent deterioration of a previously non-disabling condition." *Szubak v. Sec'y of HHS*, 745 F.2d 831, 833 (3d Cir. 1984). Finally, the claimant must demonstrate good cause for failing to provide post-decisional evidence to the ALJ in a timely manner. *Id.* at 834; *Jones*, 954 F.2d at 128. Plaintiff bears the burden of demonstrating that the three requirements of post-decision evidence have been satisfied. 42 U.S.C §405(g); *Sizemore v. Sec'y of HHS.*, 865 F.2d 709, 711 (6th Cir. 1988).

Ms. Ciccone has failed to demonstrate how the recent medical evidence provided by Drs. Haddad, Umanoff, and Weiner satisfies these requirements. Dr. Haddad's assessment of Ms. Ciccone is outside the scope of the relevant period; the ALJ rendered a decision on November 14, 2012, and Dr. Haddad's opinion was from August 2014. Furthermore, the opinions of Drs. Umanoff and Weisner fail to provide anything new or material. The ALJ evaluated their claims and opinions extensively in making his decision. As previously discussed, "a form report, in which the physician's only obligation [is] to fill in the blanks, [is] 'weak evidence at best.'" *Drejka v. Comm'r of Soc. Sec.*, 61 F. App'x 778, 782 (2d Cir. 2003). *See also Szubak*, 745 F.2d at 834 (evidence is not "new" if it is merely duplicative or cumulative.").

C. Whether the ALJ Reasonably Evaluated Plaintiff's Credibility

Plaintiff asserts: "had Claimant's condition been properly explored, the ALJ would have found her to be the Claimant who could not work." (Pl.'s Br. at 10). However, Plaintiff fails to specifically indicate what she believes is faulty about ALJ Lissek's decision. Moreover, Plaintiff does not identify any specific objective findings to support her statements, and has not elaborated

13

on what additional limitations, supported by specific citations to the record evidence, she believes the ALJ should have included in his RFC assessment. Instead, Plaintiff merely quotes from a multitude of cases, most of which are not binding authority, that outline the ALJ's determination of credibility.

It is not enough for Plaintiff to assert that she is genuinely in pain and unable to perform work; "statements about your pain or other symptoms will not alone establish that you are disabled." 20 C.F.R. §404.1529(a). A claimant's symptoms, including pain, fatigue, or weakness, are not enough to establish a disability "unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. §404.1529(b). When such findings indicate that Claimant has a medically determinable impairment "that could reasonably be expected to produce . . . symptoms, such as pain," the ALJ must examine the intensity and persistence of the symptoms so that he can determine how these symptoms affect Claimant's ability to perform work functions. 20 C.F.R. §404.1529(c)(1). "Credibility determinations as to a claimant's testimony, regarding pain and other subjective complaints are for the ALJ to make." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009)(citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)).

ALJ Lissek correctly followed the process to assess the credibility of Ms. Ciccone's assertions. He agreed that "Plaintiff could no longer perform the more strenuous demands of her past work as a warehouse worker and material handler," which required more exertion on Plaintiff's part. (R. at 30, 80). The ALJ determined that Plaintiff could perform lighter work, which was significantly less demanding; in such cases, courts have held that an "ALJ affords due weight to a claimant's subjective complaints when he limits her to work at a significantly lower level than previously performed." *Id.* (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir.

14

1986)(finding that because the ALJ completely accepted the plaintiff's complaints as "precluding any work above a sedentary level . . . the ALJ gave [plaintiff's] complaints essentially conclusive effect.")).

The ALJ found that though Plaintiff had several invasive procedures shortly after her February 2008 onset of disability, "the record contains an almost two year gap until her second procedure was performed." (R. at 25, 270). Furthermore, ALJ Lissek found large gaps in Ms. Ciccone's pain management treatment after January 2010. *Id.* at 25. A nerve stimulator device was not inserted for ten months, until November 2010. *Id.* at 25, 378, 399. In June 2011, seven months later, Plaintiff claimed that her stimulator was not working. *Id.* at 385-86, 398, 456. Despite the malfunction, Plaintiff had two consecutive four-month gaps in treatment with Dr. Umanoff wherein she presented for only two visits in eight months. *Id.* at 457-58. Many courts have held that gaps in treatment are probative in evaluating a claimant's allegation of disabling symptoms. *Simmons v. Comm'r of Soc. Sec.*, 2011 WL 4344040, at *14 (N.D. Ohio, Sept. 14, 2011) ("[T]his Court concludes that the lack of medical care during the 'gap' was evidence-evidence that Plaintiff's condition was not severe enough to require medical care, must less severe enough to be disabling."); *Hamlin v. Comm'r of Soc. Sec.*, 1996 WL 729287, at *5 (6th Cir. Dec. 17, 1996)("[G]aps in a history of medical treatment are likely to suggest that the claimant was not receiving treatment during the gaps and was not disabled then.").

Ms. Ciccone was also inconsistent in her statements about her pain. The nerve stimulator trial was placed in November 2010; Ms. Ciccone found that her pain was reduced by 60% to 70%. Another pulse generator was inserted in January 2011; shortly after, Ms. Ciccone stated that she felt fine and did not need any medication to relieve her pain. Scarcely a month later, however, Plaintiff stated that the stimulator had not improved her condition and that she

15

continued to feel significant pain. Furthermore, although Plaintiff's nerve stimulator device stopped functioning in June 2011, Plaintiff failed to report this to Dr. Umanoff until the end of July, 2011. At this time, she also said that she felt intermittent pains.

The ALJ also noted that Plaintiff alleged that her various physical and mental impairments began on February 17, 2008, yet she did not seek help for her deteriorating mental condition until September 27, 2010, two-and-half-years later. (R. at 25, 27). Ms. Ciccone said that her sleep improved with medication "and that she was doing very well prior to her administrative hearing." *Id.* at 27, 448, 450-51.

## IV.   CONCLUSION

For the foregoing reasons, this Court finds that substantial evidence supports ALJ Lissek's findings and determination that Plaintiff Kathleen Ciccone was not disabled. As such, ALJ Lissek's decision is affirmed. An appropriate Order accompanies this Opinion.

Date: February 18, 2015

Jose. L. Linares
U.S. District Judge